Curia, per Harper, Ch.
The determination of all the cases depends on the effect of the deed of feoffment which was tendered, in barring the contingent remainders which were created by the will of Nathaniel Russell. I am not aware that it is in my power to add any thing to what I have said in the case in Chancery between the same parties to have specific performance of the agreement between them. (Dudley’s Ch. R. 115.)
The motions in all the cases are dismissed.
Richardson, O’Neall, Evans, Butler and Earle, Justices; D. Johnson, Dunkin and J. Johnston, Chancellors, concurred.
Sarah Dehon v. John Redfern.
Alicia H. Middleton, Nathaniel R. Middleton and Ralph Izard Middleton v. George Kinloch.
Before Ms Honor Chancellor HARPER, at Charleston, June, 1837.
These bills were filed to enforce the specific performance of contracts, for the sale to defendants of certain houses and lots in Charleston, which were held by the complainants under the same title, and which they offered to convey to defendants by deeds of feoffment, to bar contingent remainders. The defendants objected to the title, and the only question was, whether the titles tendered were such as the defendants were bound by law to accept.
The facts are fully stated in the following decree, pronounced by Chancellor Harper:
Nathaniel Russell of Charleston, by his will, dated in 1819, after giving the premises which are in question in this suit, to his wife for life, devised as follows : “ Item. — On the death of my wife, it is my will that all and singular of my estate he divided between my two daughters, both real and personal, of what nature and kind soever, and wheresoever situated, each a moiety or equal share of my real and personal estate in severalty, for and during the term of her natural life, without impeachment of waste, to be freely had, used, occupied and enjoyed; and should either of my daughters die, leaving her present or future husband, then, from and after the death of such daughter, I give and devise her moiety or portion to such her surviving husband, in trust for the use of himself, and the proper support, educa *465 tion and maintenance, of all the children of such my daughters, to be held and applied by such surviving husband during the term of his natural life ; and upon and immediately after the death of my said daughters and their husbands, then it is my will that the moiety of my estate, real and personal, herein and hereby given to my said daughters for life, (and limited to further use during the life of their respective husbands as aforesaid, in the event of their surviving my daughters as aforesaid,) shall go, and I do hereby devise and bequeath the same, to the children of my respective daughters, the moiety of each daughter to be fairly divided amongst such of her children as she may have living at the time of her death, share and share alike, and to their respective executors, heirs, administrators and assigns forever: provided always, that should any child of either of my said daughters have died in the life time of the mother, such child or children are to take himself or herself, or equally among them, if more than one, that portion which the parent would have taken, had he or she not have died in the life time of my daughters. But should it so happen that either of my daughters at the time of her death, should have no lawful issue or descendants of her body, to take her share of the estate agreeably to the above devise and bequests, (or should it so happen at the determination of her husband’s life estate, as above given, in the event of surviving his wife,) no issue or descendant' of such daughter should be alive to take the moiety of such my daughter, according to the intent of this my will, then I do devise the share and portion of such deceased daughter, to her sister, my other daughter, if living, to be held by her, in all respects, as her own proper portion is given in this my will, to be held and subject to the like limitations. And if such, the other sister, be not then living, then such share or portion to go to and amongst her children in the same manner as her own moiety is to go under this my will.”
There is no disposition of the estate in the event of both daughters dying without leaving issue. The complainants, Mrs. Alicia H. Middleton and Mrs. Sarah Dehon, are the daughters of the testator and his heirs at law.— The husbands of both these complainants are dead — each has three children living. After the death of the testator, and of his widow who survived him, and died in 1832, a partition was made between Arthur Middleton (then living) and wife of one part, and Mrs. Sarah Dehon of the other part, by which a lot of land with a three story wooden house upon it, on the west side of Bast-Bay, was allotted to the former; and a lot with a three story brick house thereon, on the south side of Tradd-street, and another adjoining lot with a two story wooden house thereon, were allotted to the latter. This partition was confirmed by a decree of this court; the property to be held by the parties subject to the limitations of the testator’s will.
On the 11th January, 1836, Arthur Middleton entered into a contract to sell the premises allotted to him, to the defendant, George Kinloch, for the price of $8500; which amount was paid and the possession delivered.— Arthur Middleton, on his part, entered into a bond, with security, in the *466 penal sum of $10,000, conditioned to make good and sufficient titles to the said George Kinloch.
The complainant, Alicia H. Middleton, and the other complainants, Nathaniel Russell Middleton and Ralph Izard Middleton, are the executrix and executors of Arthur Middleton.
On the 27th April, 1836, complainant Sarah Dehon contracted to sell the two lots and premises allotted to her, to the defendant, John Redfern, at the price of $*7050: one-third to be paid in cash and the balance in several annual instalments, to be secured by bond and mortgage of the premises. This complainant also executed her bond, conditioned to make good and sufficient title; the cash part of the purchase money was paid and possession of the premises given.
The complainants, Alicia H. Middleton and Sarah Dehon, respectively proposed, (the former in execution of her testator’s contract, the latter of her own,) each to execute a deed of feoffment with livery of seisin, to the said George Kinloch and John Redfern, for the premises purchased by them respectively, together with a release of right of entry or action from the other, as heir at'law of the testator, Nathaniel Russell: the effect of which, it was supposed, would be to bar contingent remainders to the children or grand-children of these complainants, and give a perfect title to the purchasers. These deeds were tendered, but the defendants refused to receive them, under the impression that they did not convey a perfect title. The bills are for specific performance, and the only question is, whether the titles tendered were such as the defendants were bound to accept.
There can be no question but that the limitations by the will of Nathaniel Russell to the children or grand-children of his daughters, constituted contingent remainders. They were to the children who should be living at the death of the daughters respectively, or to the children of those who should have died leaving children: until the death of the daughters, it must remain perfectly uncertain who will be the persons to take ; and this is the definition of one species of contingent remainders. There is no pretence to construe them executory devises. But, on this point, I understand the parties to agree. Then there can be as little doubt, but that, according to the English law, (at all events as formerly existing,) a feoffment by tenant for life of a legal estate, has the effect of barring all contingent remainders depending on that life estate. Such was the determination in Archer’s case, (1 Co. 66,) which has been followed without question ever since. See also Butler’s Fearne, Cont. Rem. 6 v. p. 316, et seq. It is true that where the tenant for life is only a cestui que trust, he cannot forfeit or bar a-remainder by a feoffment, the legal estate being in the trustee : though, in this case, it is said he may, by suffering a recovery. — Fearne 321, referring to Parker v. Harrell, 2 Fearne, 213. It is on account of this liability of contingent remainders to be destroyed by the act of the tenant for life, that the practice has obtained of creating trustees to support contingent remainders. — 2 Blac. Com. 171-2. And though it is said that the mode of conveyance by feoff *467 ment is now little in use in England, being in a great degree superseded by the conveyance by lease and release, yet I have not found it suggested by any authority whatever, that th'e former mode would not now be valid and effectual, and have every legal effect that ever it had.
Then it is argued that it ought to be regarded as obsolete from long disuse in this State. But it seems to have been repeatedly recognized by the legislature. By the act of 1731, (P. L. 131, 1 Br. Dig. 170,) it is provided that no deed of feoffment shall be impeached for want of livery of seisin, and enrolment thereof. By the act of 1785 (P. L. 382, Br. Dig. 172,) providing for the recording of deeds, it is provided that in deeds of feoffment, the memorandum of livery of seisin shall be acknowledged or proved and recorded. And by the act of 1795, (2 Faust. 4, 1 Br. Dig. 176,) authorizing a particular form of conveyance, it is provided that it shall not be held to invalidate the forms heretofore in use in this State. Then how I am to regard it as obsolete since that time 1 Acts of the legislature have some time been regarded as obsolete, or presumed to be repealed where a practice has long obtained contrary to their provisions, evidenced by the decisions of courts, by which the rights of parties have been fixed, which it would be mischievous to unsettle : or however plain the terms of the act may appear to us, we suppose that the courts, by whose decisions we are bound, have given it an opposite construction.
But I am not aware that we can regard any law as obsolete, merely because for a long time no case has arisen under it: nor can I conjecture what length of time would be necessary to have the effect. Such seemed to be the view of the Court of King’s Bench in the case of the appeal of murder and claim of trial by battel.
In point of fact, however, memoranda of such conveyances of very late date were produced to me from the Register of Mesne Conveyances.
Then it is argued, that although the effect of a feoffment may be to bar a contingent remainder, when the remainder-man is an adult, yet it is no where said that it can have the effect to bar an infant. And the act of 1824, saving the rights of infants from the effect of the statute of limitations, was referred to — I suppose to show the general bearing of the law in favor of infants. It may be observed that if the remainder be contingent, it is unknown whether the remainder-man will be an infant or an adult. But the whole of the argument is founded on an inattention to the grounds of the law on the subject. By alienating in this manner, the tenant for life forfeits his estate. For this, two reasons are assigned by Blaekstone, (2 Com. 274-5). First, that it is a renunciation of the feudal duties; and, secondly, that his own act has determined his entire interest. The infancy of the remainder-man can have nothing to do in saving this forfeiture, incurred by the tenant for life on account of his wrongful act. Then the rule comes in, that a contingent remainder must take effect the instant that the preceding estate determines, or it is gone forever. And certainly this ruléis not modified by the circumstance that the remainder-man is an infant, or an adult. On the *468 determination of the estate of tenant for life, Blackstone adds: “ The next taker is entitled to enter regularly, as in his remainder or reversion.” But in this case, the complainants themselves are the heirs at law of the testator, and there being no vested remainder limited, the inheritance must be in them by reversion. They are themselves then, the only persons entitled to enter for the forfeiture, and the feoffment of one, with the release of the right of entry, and action by the other, must convey a perfect title to the feoffee — or if both should join in the feoffment, this would bar them of any possible right in the land. — Editor’s note to 2 Thos. Co. Lit. 354.
The subject of greatest doubt to me is, whether, although the feoffment, if accepted, would at law convey a good title to the feoffee, yet would a court of equity aid the complainants to defeat the contingent remainders, by compelling the defendants to accept? When there are trustees to support contingent remainders, and they join in conveying the estate so as to defeat the remainders, the court will, in general, punish them by making them personally liable. Will it then aid the tenants of the legal estate to do the same thing, when there are no trustees ? In the case of Roche v. Kidd, (5 Ves. 647,) the chancellor plainly intimates his opinion, that the court would not compel a purchaser to take such a title. Yet, even in that case, where the question was, whether the limitations were contingent remainders or executory devises, the chancellor said that if the defendants were willing, he would send a case to law for its determination, of course with a view to decree a performance, if they should be found to be contingent remainders which might be defeated. In this case, I do not understand the defendants to resist the performance, provided they can be assured of a good title, but to desire the opinion of the court upon it.
It is not according to our practice to send cases-to the courts of law. I feel some reluctance to turn the parties round to a farther litigation, when I suppose them on both sides to desire a termination of it by the judgment of this court. Indeed, it seems to be for the advantage of the defendants that this should be done.
In the last case stated, he has paid the whole of the purchase money without receiving a title. If the views I have taken be correct, that the title tendered would be good and perfect at law, then certainly he could not sustain an action to recover back the money, nor, in either case, any action on the bond conditioned to make title. Mrs. Middleton, indeed, seems to require no aid of this court.
The last objection is to the want of parties. This must proceed upon the general rule, that every person having an interest in the subject of the suit ought to be made a party. And it is supposed that the persons entitled under the limitations, upon the deaths of the complainants, have such interest.
I take the rule to be as laid down by Lord Redesdale, in Gifford v. Hort, (1 Sch. & Lef. 408,) “ that it is sufficient to bring before the court the first tenant in tail in being ; and if there be no tenant in tail in being, the first person entitled to the inheritance; and if no such person, then the tenant for life.”
*469 The complainants, who are the tenants for life, are also, according to the view I have taken, the only persons entitled to the inheritance.
It is said by Lord Eldon, in Cockburn v. Thompson, (16 Ves. 326,) that “ it has been held sufficient to bring before the court, the first person having an estate of inheritance ; though it cannot be denied that persons having present, immediate, valuable interests in the same real estate, may become
most deeply affected by what is done in their absence.” So, by Lord Hardwicke, in Pinch v. Finch, (2 Ves. 493,) that it is necessary to bring before the Court the first person entitled to the remainder or inheritance, if in being ; “ if none in whom the inheritance is vested in being, it is impossible to say the trust shall not be executed 'until a son is born,” &c. See also Reynoldson v. Parkinson, (Amb. 564.) That was a bill to foreclose a mortgage of an estate, subject to contingent remainders, and objected that the remainder-man was not a party; which was held not to be necessary.— The chancellor speaks of the inconvenience, if the foreclosure were open to every contingent remainder-man. It was an exception to the rule of making parties all persons having an interest. No doubt, in this case, the remainder-men, whoever they may be, will be bound by the decree.
It is ordered and decreed, that upon the complainant, Sarah Dehon, executing to the defendant, John Redfern, a deed of feoffment, with livery of seisin of the premises contracted to be conveyed by her to him, with a release of the right of entry and action by the other complainant, Alicia H: Middleton; or if both the said complainants shall join in such feoffment, the' said defendant accept such title : that he pay any instalment of the purchase money or interest thereon which may be now due, and execute to the said complainants his bond, with a mortgage of the premises for the purpose of securing the other instalments, in pursuance of the terms of his contract: and that upon the complainant, Alicia H; Middleton’s executing to the defendant, George Kinloch, a similar title for the premises contracted to be conveyed to him, he accept such title. Parties to pay their own costs.
From this decree the defendants appealed, on the ground that the titles tendered by complainants were not such as they were bound by law to accept ; that the form of conveyance by deed of feoffment is obsolete in this State; and that since the act of 1824, the rights of minors claiming contingent remainders would not be barred or defeated by deed of feoffment.
H. A. Desaussure, for appellants.
Petigru & Lesesne, for complainants.
Harpee, Ch. The court concurs with the chancellor on the reasoning used, that the effect of the conveyance by the feoffment with the release of the right of entry, will be to bar the contingent remainders at law and give a good title. But a majority of the court is of opinion, according to the intimation of Lord Eldon, in Roach v. Kidd, and the general doctrine of this court, that it ought not to interfere to aid the tenants for life in defeating the *470 remainders! or compel the vendees to accept such titles; and it is not perceived that any inconvenience can be sustained by the parties from this determination. One of the complainants has received the purchase money and needs no aid — the other has received part of the purchase money, and can only be required to execute title upon receiving the bond and mortgage stipulated by her contract. Though titles have been tendered and refused, yet the defendants may again demand them; and if they should he refused on the part of complainants, may sustain actions at law on their bonds for title.
It is ordered and decreed, that the decree be reversed, and the hills in both cases dismissed.
Johnsoh, Ch. I concur in the order dismissing the complainants hills.— I wish to he understood, however, as reserving the question whether the remainder-men can be barred by feoffment and livery of seisin.